UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-23443-BLOOM/OTAZO-REYES

SECURITIES AND EXCHANGE COMMISSION,   )
                                      )
         Plaintiff,                   )
v.                                    )
                                      )
SKY GROUP USA, LLC                    )
EFRAIN BETANCOURT, JR.                )
                                      )
         Defendants, and              )
                                      )
ANGELICA BETANCOURT                   )
EEB CAPITAL GROUP, LLC                )
                                      )
         Relief Defendants.           )
_____)

**DEFENDANTS SKY GROUP USA, LLC AND EFRAIN BETANCOURT, JR.'S
<u>MOTION TO DISMISS COMPLAINT</u>**

Defendants Sky Group USA, LLC ("**Sky Group**") and Efrain Betancourt, Jr. ("**Mr. Betancourt**") (collectively, "**Defendants**"), by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure ("**Rule(s)**") 12(b)(1) and Southern District of Florida Local Rule 7.1, hereby move for an order dismissing Plaintiff Securities and Exchange Commission's ("**Plaintiff**" or the "**SEC**") Complaint for Injunctive and Other Relief ("**Complaint**") Docket Entry ("**D.E.**") 1 due to a lack of subject matter jurisdiction. In furtherance of the same, Defendants respectfully state as follows:

**I.    INTRODUCTION**

Plaintiff filed its Complaint on September 27, 2021, alleging that Mr. Betancourt and Sky Group conducted a three-year-long securities offering fraud that victimized hundreds of investors

enticed by Defendants' alleged promises of a high return with low risks. *See* Complaint at 1. According to Plaintiff's Complaint, from approximately January 2016 through March 2020, Sky Group allegedly raised more than $66 million from at least 505 investors through the offer and sale of promissory notes (the "**Sky Note(s)**") (six (6) Sky Notes are attached hereto as "Composite Exhibit A"). *See id.* As discussed more fully below, the SEC has alleged that Defendants violated various provisions of the Securities Act of 1933[1] (the "**Securities Act**") and Securities Exchange Act of 1934[2] (the "**Exchange Act**") (the Securities Act and the Exchange Act are collectively, the "**Securities Acts**"), and rules promulgated thereunder. *See generally id.* Contrary to the SEC's position, the Sky Notes are not "securities" within the meaning assigned by the Supreme Court in *Reves v. Ernst & Young*, 494 U.S. 56 (1990). Therefore, the Court lacks subject matter jurisdiction to determine Defendants' liability for any alleged wrongdoing that occurred in connection with the Sky Notes and the Complaint must be dismissed as to Defendants as a matter of law.

**II.     ARGUMENT**

    **A.     Standard of Review**

A motion to dismiss a case pursuant to Rule 12(b)(1) challenges a Federal court's subject matter jurisdiction to determine a dispute. *See Douglas v. U.S.*, 814 F.3d 1268, 1278 (11th Cir. 2016). As this Court has stated, in determining whether the Court has subject matter jurisdiction over a cause of action pursuant to Rule 12(b)(1), the "[C]ourt may be required to make a factual determination whether jurisdiction is proper." *Vujasin v. Chef Vincent, Inc.*, No. 08-22048-CIV, 2008 WL 4792049, at *1(S.D. Fla. Oct. 31, 2008). In order to make that determination, the Court is authorized to consider matters outside of the pleadings, including documents in the record, testimony, and affidavits. *See Douglas*, 814 F.3d at 1278; *Lawrence v. Dunbar*, 919 F.2d 1525,

---

[1] 15 U.S.C. § 77a *et seq.*
[2] 15 U.S.C. § 78a *et seq.*

1529 (11th Cir. 1990) (a trial court is authorized to consider "matters outside the pleadings" when its subject matter jurisdiction is in question); *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015) ("For purposes of Rule 12(b)(1) review for a factual attack on jurisdiction . . . the district court was permitted to consider extrinsic documents, including all of the documents in the record here."). "[N]o presumptive *truthfulness* attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence*, 919 F.2d at 1529; *Vujasin*, 2008 WL 4792049, *1-2 (emphasis added).

The SEC has asserted in its Complaint that the Court has federal question jurisdiction over the claims against Defendants pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)]. *See* Complaint at ¶ 10. These statutes provide federal courts with subject matter jurisdiction over violations of the Securities Act and Exchange Act, respectively. However, to invoke a court's jurisdiction under the Securities Acts, there must be malfeasance *related* to a "security." *See, e.g. Vujasin*, 2008 WL 4792049, at *2 ("To decide whether this case arises under federal law [and that the Court has subject matter jurisdiction over the case], I must first decide whether [the subject transactions] involve[d] *securities . . .*") (emphasis added). The SEC nonchalantly asserts that the Sky Notes are "securities." *See generally* Complaint. Apart from the Securities Acts, the SEC has not asserted any alternative basis for this Court's subject matter jurisdiction over the claims against Defendants. *See generally id*. Since the Sky Notes are not "securities,' as set forth herein, the Court lacks subject matter jurisdiction to determine whether Defendants are liable for any damages relating to the Sky Notes and dismissal of the Complaint in its entirety against Defendants is appropriate.

### B. The Sky Notes at Issue Are Not Securities

Although Section 2(a)(1) of the Securities Act and Section 3(a)(1) of the Exchange Act define "security" to include "notes," in enacting the Securities Acts, Congress did not intend to provide a broad federal remedy for all fraud. *See Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982). The Supreme Court has repeatedly held that the test to be utilized in determining whether an instrument qualifies as a "security" is "what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect." *Marine Bank*, 455 U.S. at 556 (citations omitted).

In *Reves,* the Supreme Court held that, while common stock is an investment and, consequently, the "quintessence of a security," the same cannot be said of notes, which are used in a variety of settings—not all of which involve investments. As such, the term "note' should not be interpreted to mean literally "any note," but must be analyzed in light of what Congress was attempting to accomplish in enacting the Securities Acts. 494 U.S. at 56. The *Reves* Court held that while a "note" is presumed to be a security under the Securities Acts, certain types of instruments are excluded from the definition of a security as a matter of law. *See id.* These notes include: notes delivered in consumer financing; notes secured by a home mortgage; short-term notes secured by a lien on a small business or some of its assets; a note evidencing a character loan to a bank customer; short-term notes secured by an assignment of accounts receivable; a note which simply formalizes an open account debt incurred in the ordinary course of business; or notes evidencing loans by commercial banks for current operations. *Id*. at 65. In addition, any note bearing a strong "family resemblance" to any of these instruments is not a "security" and therefore is not subject to federal securities laws. *Id.* (citing *Exchange Nat. Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1137 (2d Cir. 1976))

Pursuant to the four "family resemblance" factors adopted by the *Reves* Court (that have since became known as the "family resemblance test"), as set forth more fully below, a note is not a security if: (i) "the seller's purpose is [not] to raise money for the general use of a business enterprise . . . *and* the buyer is [not] interested primarily in the profit the note is expected to generate"; (ii) the note is not transferable or assignable; (iii) the investing public could only have reasonably believed that the notes entitled them to interest payments, not a portion of the seller's profits; and (iv) the notes contain significant risk-reducing factors that would protect the purchasing public "rendering application of the Securities Acts unnecessary." *Reves*, 494 U.S. at 65-67.

### 1. The Sky Notes Were Not Used to Fund Sky Group's General Operations

Pursuant to the first factor of the family resemblance test, as set forth in *Reves*, a court must "assess the motivations of the buyer and seller." *Id.* at 66. The *Reves* Court has instructed that "if the note is exchanged to . . . advance some . . . commercial or consumer purpose [(i.e., to raise money for the *general* use of a business enterprise or to finance substantial investments)] . . . the note is less sensibly described as a 'security.'" *Id.* at 66-67.

Sky Group sold each Sky Note to a Sky Group lender for, as disclosed on each Sky Note, the express purpose of advancing the specific commercial and consumer purpose of facilitating small-dollar credit products (i.e., portfolio financing and associated costs). *See* Composite Exhibit A at Art. IV of each Sky Note. Where a note, as here, is evidence of a loan between two parties, courts have refused to characterize the note as a "security." *See, e.g., Holloway v. Peat, Marwick, Mitchell & Co.*, 900 F.2d 1485, 1489, n.1 (10th Cir. 1990) (holding that the use of proceeds to finance specific assets or *services* rather than general financing indicates the instrument is not a security under the first *Reves* factor); *Eagle Trim, Inc. v. Eagle Pitcher Indus., Inc.*, 205 F. Supp.

5

2d 746, 750-51 (E.D. Mich. 2002) (note executed to finance a specific asset advanced a commercial purpose and could not be considered a security) (emphasis added).

Certainly, as the SEC notes in its Complaint as a factor supporting the notion that the Sky Notes are "securities," each lender was likely motivated by interest that the Sky Notes would generate. *See* Complaint at ¶¶ 15, 16. However, the Supreme Court specifically described the two requirements of the first *Reves* factor in the conjunctive (using "*and*" with respect to buyers' and sellers' motivations) requiring both that the note be for a loan for general use *and* that the note be profit-oriented. *See Reves*, 494 U.S. at 66. In the instant matter, the first prong of the initial *Reves* factor is not met – Sky Group's primary purpose in selling the Sky Notes was not for Sky Group's "general use," but rather to facilitate small-dollar credit products (as noted on the face of the Sky Notes, the lender funds were to be used for the "sole purpose of portfolio financing and associated cost[s].") *See* Composite Exhibit A at Art. IV of each Sky Note.[3] Accordingly, the first *Reves* factor supports a finding that the Sky Notes are not "securities."

### 2. The Sky Notes are Non-Assignable and Non-Transferable Without a "Plan of Distribution"

The second *Reves* factor examines the plan of distribution of the instrument "to determine whether it is an instrument in which there is common trading for speculation or investment.'" *Reves*, 494 U.S. at 67. This factor encompasses two distinct elements: (1) whether there is "common trading" of the Sky Notes and, if so; (ii) whether such common trading is for "speculation or investment." *See id.* at 66 (quoting *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 353 (1943)). A lack of transferability of the instruments undermines any finding that there is "common trading." *See Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1539 (10th Cir. 1993);

---

[3] Plaintiff's allegations in the Complaint that the proceeds from the Sky Notes were to be utilized to fund "payday loans" acknowledges the Sky Notes were not for Sky Group's "general use." See Complaint at ¶¶2, 16, 20-25, 27-28, 30-31 (all referencing payday loans).

*see also Reves*, 494 U.S. at 68 (citing case law that found that "transferable" investments could be a "security"). Further, the number of buyers (lenders, in this case) of the instrument is a not a significant factor in determining whether the instrument is "commonly traded." *See SEC v. Global Telecom Services, LLC*, 325 F. Supp. 2d 94 (D. Conn. 2004) (*Reves* plan of distribution factor met by sales of notes to five purchases) *cf Glazer v. Abercrombie & Kent, Inc.*, No. 07 C 2284, 2009 WL 3060269, *8 (N.D. Ill. Sept. 22, 2009) (finding that even though defendant sold approximately 400 instruments, since the instruments could not be sold on the secondary market, the *Reves* factors favored the defendant).

      The Sky Notes were not commonly traded for speculation or investment. Instead, the Sky Notes were issued to individual lenders with the understanding that these lenders would receive a finite number of scheduled principal and interest payments pursuant to a prescribed and agreed upon "*Installment Payment Schedule*" until their principal was repaid. *See* Composite Exhibit A at Exh. A of each Sky Note. Moreover, the Sky Notes were non-assignable, whereby neither the lender nor the borrower could freely trade or otherwise alienate their interest in the Sky Notes. *See id.* at 4. The Complaint is devoid of any allegation that the Sky Notes were "commonly traded." *See generally* Complaint. The fact that there is no secondary market for the Sky Notes further demonstrates that they are not prototypical securities. *See Marine Bank*, 455 U.S. at 560 ("[A] security is an instrument in which there is 'common trading.'") (quoting *C.M. Joiner Leasing*, 329 U.S. at 351); *see also Banco Espanol de Credito v. Sec'y Pac. Nat'l Bank*, 973 F.3d 51, 55 (2d Cir. 1992) (concluding note was not a security, in part, because the "plan of distribution . . . worked to prevent the loan participations from being sold to the general public," including that notes could not be re-sold without "express written permission" of defendant); *Kirschner v. J.P. Morgan Chase Bank, N.A.*, 17 Civ. 6334 (PGG), 2020 WL 2614765, at *8 (S.D.N.Y. May 22, 2020) (notes that

were not issued to members of the general public and that could not be assigned without express written consent of issuer were not securities); *Great Rivers Co-op of S.E. Iowa v. Farmland Indus. Inc.*, 198 F.3d 685, 700 (8th Cir. 1999) (finding capital credits not securities where they "were not freely transferable, where not traded on any securities exchange, and, in fact, had no secondary market"); *Nat'l Bank of Yugoslavia v. Drexel Burnham Lambert, Inc.*, 768 F. Supp. 1010 (S.D.N.Y. 1991) ("Since there is no allegation that there was a secondary market for the time deposits, [plaintiff] does not show that there was 'common trading for speculation or investment' in the notes."). Accordingly, the second *Reves* factor supports a finding that the Sky Notes are not securities.

### 3. The Public Could Not Have Reasonably Expected That the Sky Notes Entitled Them to a Portion of Sky Group's Profits

The third *Reves* factor concerns the public's reasonable perceptions of a given instrument to determine whether it can be fairly considered an "investment," and therefore, a security. *See Reves*, 494 U.S. at 66-67. In order to satisfy this factor, there must be some circumstance that would create a public perception that the Sky Notes were investments akin to a sale of stock, rather than a note used in a borrower/lender setting. *See Eagle Trim, Inc. v. Eagle Pitcher Indus., Inc.*, 205 F. Supp. 2d 746, 752 (E.D. Mich. 2002) (finding that public could not reasonably perceive that promissory notes issued in a borrower/lender setting are "securities"); *see also Procter & Gamble*, 925 F. Supp. 1270, 1279 (S.D. Ohio 1996) (noting that the third prong of the *Reves* test was not met because the notes at issue were not traded on a national exchange).

In this case, there is no basis to conclude that the public would perceive the Sky Notes as investment vehicles akin to stocks. The Sky Notes were never traded and did not contain language that the lenders would be entitled to any profits over the interest accruing on the notes. *See generally* Composite Exhibit A. Further, the Sky Notes were referred to as "notes" throughout the

loan documents and referred to the respective parties as "Lender" and "Borrower," which is further indicia that the parties understood that the Sky Notes were loans—not securities. *See id.*; *see also Banco Espanol*, 973 F.2d at 55 (finding that purchasers of loan participations "were given ample notice that the instruments were participations in loans and not investments in a business enterprise"); *Kirschner*, 2020 WL 2614765, at *9 ("This Court agrees with Defendants that the Credit Agreement and CIM [Confidential Informational Memorandum] would lead a reasonable investor to believe that the Notes constitute loans, and not securities. For example, the Credit Agreement repeatedly refers to the underlying transaction documents as 'loan documents,' and the words 'loan' and 'lender' are used consistently, instead of terms such as 'investor.' . . . The CIM also consistently refers to prospective purchasers of the Notes as 'lender[s].'"); *Asset Prot. Plans, Inc. v. Oppenheimer & Co.*, No. 8:11-cv-440-T-23MAP, 2011 WL 2533839, at *3 M.D. Fla. Jun. 27, 2011) (finding that the promissory notes had the appearance of loans, and not securities, because "[e]ach note is written in the manner of a loan, designates the buyer as 'Lender/NoteHolder,' the seller as "Borrower,' and the money lent as the "Loan Amount.").

Notwithstanding the specific language used to describe, or contained in, the Sky Notes, they each contain features that are not commonly associated with securities. For example, the Sky Notes included acceleration clauses and collection costs clauses, including attorney fee provisions. *See, e.g., Thompson*, 732 F.3d at 1167 (finding that instruments with features such as acceleration clause, waiver-of-presentment clause, non-assignment clause, and attorney-fee-collection clause were not indicative of securities); *see also* Composite Exhibit A at Art. II and VI of each Sky Note. This third *Reves* factor thus supports a finding that the Sky Notes are not securities.

9

### 4. The Sky Notes' Risk-Mitigating Factors Neutralize the Need for Protections of the Securities Laws

Finally, the fourth *Reves* factor inquires whether there are any "risk-reducing factor[s]" of a given instrument that would protect the purchasing public. *Reves*, 494 U.S. at 69. Here, the Sky Notes contained guaranty provisions, non-waiver and non-assignment clauses, loan acceleration clauses, a late fee provision, security provisions, and a plethora of other risk mitigation and lender protection provisions, which each weigh against a determination that the Sky Notes are securities. *See generally* Composite Exhibit A; *Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577, 585 (6th Cir. 2000) ("[T]he existence of collateral is significant as a risk-reducing factor, and these notes were heavily secured by" business assets); *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1539 (10th Cir. 1993) ("We find that the existence of collateral is a risk-reducing factor that favors finding that the [instruments] are not securities."). Finally, the Sky Notes were also negotiated. *See generally* Composite Exhibit A. As evidenced by the Sky Notes, each lender negotiated for various interest rates to be attached to their loans. *See id.* The *Asset Prot. Plans, Inc.* Court held that "[i]f a loan is negotiated directly between two parties, a main concern of the Securities Acts—that the issuer 'has superior access to and control of information' while the investor must rely 'solely on semi-anonymous and secondhand market information'—is not present." 2011 WL 2533839, at *4 (citation omitted). These aforementioned safeguards that serve to protect the lender's interest compel the conclusion that the Sky Notes are not securities.

### III. CONCLUSION

As described herein, the Sky Notes are similar to the notes the Supreme Court has recognized as not being "securities." Applying the *Reves* "family resemblance" test confirms that the Sky Notes are not securities. Because the Sky Notes are not "securities," the Court lacks subject matter jurisdiction to adjudicate the claims asserted against Defendants.

**WHEREFORE**, Defendants Sky Group USA, LLC and Efrain Betancourt, Jr., respectfully request an Order of the Court dismissing Plaintiff's Complaint for Injunctive and Other Relief and Demand for Jury Trial, and for such other relief the Court deems just and proper.

**DATED**:   December 10, 2021
             Coral Gables, Florida

                                                */s/ Mark David Hunter*
                                                Mark David Hunter, Esquire
                                                Florida Bar No. 12995
                                                Jenny Johnson-Sardella, Esquire
                                                Florida Bar No. 67372
                                                Hunter Taubman Fischer & Li LLC
                                                2 Alhambra Plaza, Suite 650
                                                Coral Gables, Florida 33134
                                                Tel:   (305) 629-1180
                                                Fax:   (305) 629-8099
                                                E-mail: mhunter@htflawyers.com
                                                        jsardella@htflawyers.com

## **CERTIFICATE OF SERVICE**

I, Mark David Hunter, do hereby certify that on December 10, 2021, a true and correct copy of the foregoing document was electronically filed and served. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the Court's CM/ECF System.

                                      */s/ Mark David Hunter*
                                      Mark David Hunter