UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-23443-BLOOM/OTAZO-REYES

SECURITIES AND EXCHANGE COMMISSION,   )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )
                                      )
SKY GROUP USA, LLC                    )
EFRAIN BETANCOURT, JR.                )
                                      )
        Defendants, and               )
                                      )
ANGELICA BETANCOURT                   )
EEB CAPITAL GROUP, LLC                )
                                      )
        Relief Defendants.            )
_____)

**DEFENDANTS SKY GROUP USA, LLC AND EFRAIN BETANCOURT, JR.'S
MOTION TO DISQUALIFY RICHARD J. DIAZ AS COUNSEL
FOR RELIEF DEFENDANT ANGELICA BETANCOURT**

Defendants Sky Group USA, LLC ("**Sky Group**") and Efrain Betancourt, Jr. ("**Mr. Betancourt**") (collectively, "**Defendants**"), by and through their undersigned counsel, hereby file this Motion to Disqualify Richard J. Diaz ("**Diaz**") as Counsel for Relief Defendant Angelica Betancourt ("**Ms. Betancourt**") ("**Motion to Disqualify**"). In furtherance of the same, Defendants respectfully state as follows:

I.  **INTRODUCTION**

Plaintiff Securities and Exchange Commission ("**Plaintiff**" or the "**SEC**") filed its Complaint for Injunctive and Other Relief ("**Complaint**") Docket Entry ("**D.E.**") 1 on September 27, 2021, alleging that Mr. Betancourt and Sky Group conducted a three-year-long

securities offering fraud that victimized hundreds of investors enticed by Defendants' alleged promises of a high return with low risks. *See* Complaint at ¶ 1. According to Plaintiff's Complaint, from approximately January 2016 through March 2020, Sky Group allegedly raised more than $66 million from at least 505 investors through the offer and sale of promissory notes (the "**Sky Note(s)**"). *See id.* According to Plaintiff's allegations, Defendants violated various provisions of the Securities Act of 1933[1] (the "**Securities Act**") and Securities Exchange Act of 1934[2] (the "**Exchange Act**") (the Securities Act and the Exchange Act are collectively, the "**Securities Acts**"), and rules promulgated thereunder. *See generally id.* In addition to its claims against Defendants, Plaintiff asserted an unjust enrichment claim against Ms. Betancourt as a Relief Defendant because "[s]he received at least $1.2 million of Sky Group investor funds for no apparent legitimate business purpose." *Id*. at ¶ 8. Ms. Betancourt is represented by Diaz, however Diaz's representation of Ms. Betancourt violates the Florida Rules of Professional Conduct. For the reasons set forth more fully herein, Diaz must be disqualified as counsel for Ms. Betancourt.

**II.   BACKGROUND**

On or about October 1, 2021, Diaz entered his Notice of Appearance ("**NOA**") on behalf of Ms. Betancourt. D.E. 10. In or around July 2020, prior to Diaz entering his NOA on behalf of Ms. Betancourt, Diaz filed three (3) arbitrations against Sky Group and Mr. Betancourt before the American Arbitration Association ("**AAA**") on behalf of individuals (the "**Claimants**") that previously acquired Sky Notes. Specifically, the Claimants alleged causes of action against Sky Group and Mr. Betancourt for, (1) breach of contract (against Sky Group), (2) unjust enrichment,

---

[1] 15 U.S.C. § 77a *et seq.*
[2] 15 U.S.C. § 78a *et seq.*

2

(3) conversion, (4) negligent misrepresentation, (5) fraudulent inducement, (6) fraudulent concealment, (7) conspiratorial fraud, and (8) violations of the Florida Deceptive and Unfair Trade Practices Act. Diaz's ongoing representation of the Claimants in the AAA arbitrations is diametrically opposed to his representation of Ms. Betancourt in this matter.

Upon information and belief, Diaz is not charging Ms. Betancourt for his representation in this litigation. However, Diaz's representation of Ms. Betancourt is anything but noble. Rather, Diaz is improperly utilizing his representation of Ms. Betancourt in this action to obtain a strategic advantage in the AAA arbitrations in which he is adverse to Sky Group and Mr. Betancourt. Since Ms. Betancourt is a Relief Defendant in this matter, her interests are aligned to those of Defendants because any potential financial liability Ms. Betancourt faces is directly linked to a finding of wrongdoing by Defendants. While Ms. Betancourt's potential liability as a Relief Defendant is dependent upon Defendants' liability herein, Diaz previously emailed Defendants (the "**Diaz Email**") (attached hereto as "Exhibit A") and stated (without provocation) that Ms. Betancourt would not enter into a joint defense agreement, and further stated that Ms. Betancourt's "position does not favor [Mr. Betancourt] or [Sky Group]." *See* Exhibit A at 1. Diaz further illustrated his true motives for representing Ms. Betancourt in November 2021, when he filed "Claimant's Proposed Stipulation of Facts, Witness List and Exhibit List" in an AAA arbitration. Specifically, Diaz disclosed that he intended to utilize documents that the SEC has produced in this matter in the aforementioned AAA arbitration for the benefit of his arbitration clients. In doing so, Diaz intends to utilize discovery from the SEC, who is adverse to Ms. Betancourt (his current client), to benefit another current client (who is also adverse to Ms. Betancourt), a Claimant in a AAA arbitration.

In December 2021, Diaz again illustrated his current conflict with Ms. Betancourt when

he spoke to a Miami Herald reporter and provided quotes for an article (the "**Sky Group Article**"). Notably, Diaz referred to Mr. Betancourt as a "mini-Madoff." *See* Jay Weaver, *Miami payday loan operator promised investors huge returns. SEC says they lost millions*, MSN News (December 28, 2021), https://www.msn.com/en-us/news/crime/miami-payday-loan-operator-promised-investors-huge-returns-sec-says-they-lost-millions/arAAScJkB?ocid=BingNewsSearch. In connection with providing information for the Sky Group Article, Diaz further disregarded his ethical obligations by violating a Stipulated Confidentiality and Protective Order that he executed in the AAA arbitrations (attached hereto as "Exhibit B") when he disclosed testimony from Mr. Betancourt's confidential deposition transcript. Ironically, while Diaz accused Defendants of perpetrating a Ponzi scheme in the Herald Article, according to the SEC, Ms. Betancourt "was employed by Sky Group in an administrative capacity," and "[s]he received at least $1.2 million of Sky Group investor funds for no apparent legitimate business purpose." *See* Complaint at ¶ 8. For clarity purposes, the SEC has alleged that Ms. Betancourt received investor funds that Diaz is attempting to recover for his clients in the AAA arbitrations. **To the extent that Diaz is victorious in any of the AAA arbitrations, and to the extent the Claimants are unable to obtain satisfaction of an arbitration award from Mr. Betancourt or Sky Group, the Claimants would seek relief from Ms. Betancourt.** Despite the express conflict of interest between Ms. Betancourt and the Claimants, and in stark contrast to his ethical obligations, Diaz currently continues his representation of these adverse parties.

### III. ARGUMENT

#### A. Legal Standard

"The party bringing the motion to disqualify bears the burden of proving grounds for disqualification." *Hermann v. GutterGuard, Inc.*, 199 F. App'x. 745, 752 (11th Cir. 2006) (citing *In re Bellsouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003)); *see also General Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1337 (S.D. Fla. 2001) ("The burden of proof initially is on the moving party to establish grounds for disqualification."). "Motions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear . . . Second, federal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of parties." *Hermann*, 199 F. App'x at 752. Disqualification of counsel is a drastic remedy and will not be granted lightly. *See Metrahealth Ins. Co. v. Anclote Psychiatric Hospital, Ltd.*, 961 F. Supp. 1580, 1582 (M.D. Fla. 1997) (noting that an order for disqualification is a "drastic means which courts should hesitate to impose except when absolutely necessary.") (citation omitted). Indeed, disqualification is a "harsh sanction" that works "substantial hardship on the client" and should, thus, "be resorted to sparingly." *Hermann*, 199 F. App'x at 752 (quoting *Norton v. Tallahassee Memorial Hospital*, 689 F.2d 938, 941 n.4 (11th Cir. 1982)).

The Florida Rules of Professional Conduct provide the standard for determining whether counsel should be disqualified. *See Young v. Achenbauch*, 136 So. 3d 575, 580 (Fla. 2014). With respect to motions to disqualify counsel, "courts are skeptical because [these] motions are sometimes filed for tactical reasons or to harass the other party." *Silvers v. Google, Inc.*, No. 05–80387–CIV, 2007 WL 141153, at *1 (S.D. Fla. Jan. 16, 2007). "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if

'compelling reasons' exist." *In re BellSouth Corp.*, 334 F.3d at 961.  However, this Court's Local Rules require compliance with the Rules Regulating The Florida Bar.  *See* S.D. Fla. L.R. 11.1(c); *Deauville Hotel Prop., LLC v. Hartford Steam Boiler Inspection & Ins. Co.*, No. 13-20983-CIV, 2013 WL 11316968, at *2 (S.D. Fla. Sept. 6, 2013).

   B.   Analysis

Florida Rules Regulating the Bar, Rule 4-1.7 provides, in relevant part, as follows:

**RULE 4-1.7 CONFLICT OF INTEREST; CURRENT CLIENTS**

(a)   **Representing Adverse Interests**. Except as provided in subdivision (b), a lawyer must not represent a client if:

   (1) the representation of 1 client will be directly adverse to another client; or

   (2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b)   **Informed Consent**. Notwithstanding the existence of a conflict of interest under subdivision (a), a lawyer may represent a client if:

   (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

   (2) the representation is not prohibited by law;

   (3) the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal; and

   (4) each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing.

(c)   **Explanation to Clients**. When representation of multiple clients in a single matter is undertaken, the consultation must include an explanation of the implications of the common representation and the advantages and risks involved.

Fla. R. Regulating the Bar, 4-1.7 (bolding in original).  The comments to Rule 4-1.7 are instructive, and state as follows: "[l]oyalty and independent judgment are essential elements in the lawyer's relationship to a client.  Conflicts of interest can arise from the lawyer's

responsibilities to another client, a former client or a third person, or from the lawyer's own interests." *See* Fla. R. Regulating the Bar, 4-1.7 Comments. "An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. If such a conflict arises after representation has been undertaken, the lawyer should withdraw from the representation." *Id*. Moreover, the comments to Rule 4-1.7 further illustrate that:

> As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client's or another client's interests without the affected client's consent. Subdivision (a)(1) expresses that general rule. Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not require consent of the respective clients. Subdivision (a)(1) applies only when the representation of 1 client would be directly adverse to the other and where the lawyer's responsibilities of loyalty and confidentiality of the other client might be compromised.

*Id*. "Loyalty to a client is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. *Id*. In connection with this matter, when Defendants advised Diaz of Defendants' intention to file this Motion to Disqualify, Diaz threatened Defendants (and their counsel) with a Fed. R. Civ. P. ("Rule") 11 Motion ("Diaz Letter") (attached hereto as "**Exhibit C**") wherein Diaz unintentionally acknowledged that Ms. Betancourt has not yet been provided with any conflict waiver. See Diaz Letter at 3 ("Even if the court find [sic] a conflict of interest, the only one who could be adversely affected would be [Ms. Betancourt] and **she will simply execute a conflict waiver** based on consultation and advice from independent counsel.") (emphasis added).

As set forth above, Ms. Betancourt is a Relief Defendant in this matter. "A relief defendant, sometimes referred to as a nominal defendant, has no ownership interest in the property that is the subject of litigation but may be joined in the lawsuit to aid the recovery of relief. A relief defendant is not accused of wrongdoing, but a federal court may order equitable relief against such a person where that person (1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds." *SEC v. Founding Partners Capital Management*, 639 F. Supp. 2d 1291, 1293 (M.D. Fla. 2009) (citations and quotations omitted). Given Ms. Betancourt's role as a Relief Defendant, her interests are closely aligned with those of Defendants. *See SEC v. Cross Financial Services, Inc.*, 908 F. Supp. 718, 731 (C.D. Cal. 1995) (noting no meaningful difference between a defendant and nominal defendant for disgorgement purposes). Here, Diaz's representation of the Claimants in the AAA arbitrations are directly adverse to Ms. Betancourt – if any Claimant obtains an arbitration award against Mr. Betancourt or Sky Group, Diaz may have to seek financial remuneration from Ms. Betancourt based upon the SEC's allegations that Ms. Betancourt received investor funds without any legitimate purpose.

"Where attorneys have undertaken representation that is adverse to a current client, the conduct of the attorneys undertaking the concurrent representation must be measured against the duty of undivided loyalty to each of the attorneys' clients." *General Cigar Holdings, Inc.*, 144 F. Supp. 2d at 1338. "When the representation is concurrent . . . adverse representation is *prima facie* improper." *Id.* at 1337. "An attorney concurrently representing two clients bears the 'heavy burden of demonstrating that there will be no actual or apparent conflict in loyalties or a diminution in the vigor of their representation.'" *Arnett v. Mid-Cont'l Cas. Co.*, No. 8:08-CV-2373-T-27EAJ, 2009 WL 10670499, at *2 (M.D. Fla. Nov. 19, 2009*)*. "In addition, an attorney

8

concurrently representing two clients bears the burden of proving full disclosure of the adverse effects of the representation and informed consent." *Id*. Moreover, because it is unlikely that Ms. Betancourt is aware of Diaz's conflict, it is necessary for Defendants to bring such conduct to the Court's attention. Indeed, "a party may seek disqualification of opposing counsel where the conflict of interest involves representation of someone other than the movant and where it is such 'as clearly to call in question the fair or efficient administration of justice.'" *Boca Raton Regional Hospital, Inc. v. Williams*, 230 So. 3d 42, 45 (Fla. 4th DCA 2017) (quoting *State Farm Mutual Automobile Insurance Co. v. K.A.W.*, 575 So. 2d 630, 632 (1991)). Given Diaz's representation of investors against Mr. Betancourt and Sky Group in the AAA arbitrations, his representation of Ms. Betancourt, a Relief Defendant, is improper.

## IV.  CONCLUSION

Based on the arguments and authorities set forth herein, Sky Group and Mr. Betancourt request that the Court grant this motion to disqualify Diaz from representing Relief Defendant Ms. Betancourt in this matter, and grant Ms. Betancourt a reasonable time period to secure new counsel.

**LOCAL RULE 7.1(a)(3) CERTIFICATION**

The undersigned counsel certifies that they conferred with counsel for all parties herein informing them of this Motion to Disqualify. Counsel for Ms. Betancourt opposes the Motion to Disqualify, and Counsel for Plaintiff and EEB Capital, LLC take no position with respect to the Motion to Disqualify.

**DATED**: February 14, 2022
Coral Gables, Florida

*/s/ Robert C. Harris*
Mark David Hunter, Esquire
Florida Bar No. 12995
Jenny Johnson-Sardella, Esquire
Florida Bar No. 67372
Robert C. Harris, Esquire
Florida Bar No. 26206
Hunter Taubman Fischer & Li LLC
2 Alhambra Plaza, Suite 650
Coral Gables, Florida 33134
Tel: (305) 629-1180
Fax: (305) 629-8099
E-mail: mhunter@htflawyers.com
jsardella@htflawyers.com
rharris@htflawyers.com

**CERTIFICATE OF SERVICE**

I, Robert C. Harris, do hereby certify that on February 14, 2022, a true and correct copy of the foregoing document was electronically filed and served. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the Court's CM/ECF System.

                                              */s/ Robert C. Harris*
                                              Robert C. Harris