# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:21-cv-23443-BLOOM/OTAZO-REYES

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **SKY GROUP USA, LLC** | ) |
| **EFRAIN BETANCOURT, JR.** | ) |
| | ) |
| Defendants, and | ) |
| | ) |
| **ANGELICA BETANCOURT** | ) |
| **EEB CAPITAL GROUP, LLC** | ) |
| | ) |
| Relief Defendants. | ) |
| _____ | ) |

## DEFENDANTS SKY GROUP USA, LLC AND EFRAIN BETANCOURT, JR.'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY RICHARD J. DIAZ AS COUNSEL FOR RELIEF DEFENDANT ANGELICA BETANCOURT

**DATED**:   February 24, 2022
Coral Gables, Florida

*/s/ Robert C. Harris*
Mark David Hunter, Esquire
Florida Bar No. 12995
Jenny Johnson-Sardella, Esquire
Florida Bar No. 67372
Robert C. Harris, Esquire
Florida Bar No. 26206
Hunter Taubman Fischer & Li LLC
2 Alhambra Plaza, Suite 650
Coral Gables, Florida 33134
Tel:    (305) 629-1180
Fax:   (305) 629-8099
E-mail: mhunter@htflawyers.com
jsardella@htflawyers.com
rharris@htflawyers.com

Defendants Sky Group USA, LLC ("**Sky Group**") and Efrain Betancourt, Jr. ("**Mr. Betancourt**") (collectively, "**Defendants**"), by and through their undersigned counsel, hereby file this Reply in Support of Motion to Disqualify Richard J. Diaz ("**Diaz**") as Counsel for Relief Defendant Angelica Betancourt ("**Ms. Betancourt**"). In furtherance of the same, Defendants respectfully state as follows:

## I.   INTRODUCTION AND BACKGROUND

On or about February 14, 2022, Defendants filed their Motion to Disqualify Diaz as Counsel for Ms. Betancourt ("**Motion to Disqualify**") (Docket Entry ("**D.E.**") 40), wherein Defendants detailed Diaz's express and explicit conflict of interest between Ms. Betancourt and Diaz's current arbitration clients. *See generally* Motion to Disqualify. On or about February 17, 2022, Diaz filed Relief Defendant, Angelica Betancourt's Response in Opposition to Defendant Sky Group USA, LLC and Efrain Betancourt's Motion to Disqualify Counsel ("**Opposition**") (D.E. 44). In the Opposition, Diaz failed to address the conflict of interest between his current clients as detailed in Defendants' Motion to Disqualify. A cursory reading of the Opposition illustrates that Diaz has apparently failed to recognize the express conflict of interest addressed in the Motion to Disqualify. *See generally* Opposition. For the reasons set forth in Defendants' Motion to Disqualify, as well as herein, Diaz must be disqualified as counsel for Ms. Betancourt.

## II.   ARGUMENT

### A. DIAZ'S REPRESENTATION OF MS. BETANCOURT VIOLATES FLORIDA BAR RULE 4-1.7 BECAUSE HIS ARBITRATION CLIENTS ARE ADVERSE TO MS. BETANCOURT

As set forth in Defendants' Motion to Disqualify, Diaz's representation of Ms. Betancourt violates Rule 4-1.7 of the Florida Rules Regulating the Bar. *See* Motion to Disqualify at 6-9. Diaz currently represents three (3) individuals ("**Arbitration Clients**") who

1

have instituted actions against Sky Group and Mr. Betancourt in three (3) separate arbitration proceedings before the American Arbitration Association ("**AAA**") wherein those individuals alleged that Sky Group and Mr. Betancourt perpetrated a fraud on them.  *See* Motion to Disqualify at 2-3.  At the same time, Diaz represents Ms. Betancourt in this proceeding wherein the Securities and Exchange Commission ("**Plaintiff**" or the "**SEC**") has alleged that Ms. Betancourt received over $1 million of Sky Group investor funds (i.e., funds from Diaz's Arbitration Clients).  *Id*. at 2.  Diaz's representation of the Arbitration Clients and Ms. Betancourt are undoubtedly adverse.  Despite the glaring conflict between Diaz's <u>current</u> clients (Ms. Betancourt and the Arbitration Clients), Diaz failed to comprehend Defendants' well-reasoned arguments in their Motion to Disqualify, and incorrectly argued that he did not violate Florida Bar Rule 4-7.7.[1]  *See* Opposition at 2-4 ("Neither [Mr. Betancourt] nor Sky [Group] have ever been Diaz'[s] clients.").

Defendants did not claim — nor do they claim — that Diaz's current conflict is due to Diaz's representation of Defendants since Diaz has never represented Defendants.  However, because the SEC sued Ms. Betancourt as a Relief Defendant for unjust enrichment in this matter, Ms. Betancourt's interests are closely aligned with Defendants' interests.  When it suited Diaz's narrative, he agreed that Ms. Betancourt's interests are "aligned" with Defendants' interests. *See* D.E. 40-3 at 2 (Diaz's Rule 11 Letter) ("**Diaz Letter**") ("Ironically, not only are [Ms. Betancourt's] ***interests not adverse to Sky [Group] or [Mr. Betancourt's]***, rather, they are somewhat *'aligned'* because [Ms. Betancourt] could only have liability if the SEC first establishes that Sky [Group] or [Mr. Betancourt] violated any SEC rule or law.") (emphasis added).  Despite Diaz's acknowledgment that Ms. Betancourt's and Defendants' interests are in

---

[1] As the Court is aware, Rule 4.7-7 is a vacant/empty Rule.  The Opposition's citation to the incorrect Florida Rule Regulating the Bar demonstrates Diaz's cavalier approach to his ethical obligations.

fact aligned, Diaz openly admitted that he represents three (3) individuals before the AAA against Sky Group and Mr. Betancourt for, among other things, fraud. *See* Opposition at 1 ("Years before the SEC filed the complaint in this case, Diaz was representing three claimants – Melissa Montoya, Andres Zorrilla and Juan Pablo Montoya - against Sky [Group] and [Mr. Betancourt] for fraud and breach of contract relating to their investments with Sky [Group]").

The Opposition failed to meaningfully address the conflict between Ms. Betancourt and Diaz's Arbitration Clients. Instead, Diaz mistakenly claimed as follows: "[a]lthough, the interests of Andres Zorrilla, Melissa Montoya and Juan Pablo Montoya are not adverse to Angelica's interests, even if they were, Defendants have no standing to object to that representation; only those clients would and they are not voicing any complaint of conflict." *See* Opposition at 3. Contrary to Diaz's position, Defendants' Motion to Disqualify established that Defendants have standing to seek Diaz's disqualification as counsel for Ms. Betancourt. *See* Motion to Disqualify at 9 ("a party may seek disqualification of opposing counsel where the conflict of interest involves representation of someone other than the movant and where it is such 'as clearly to call in question the fair or efficient administration of justice.'" *Boca Raton Regional Hospital, Inc. v. Williams*, 230 So. 3d 42, 45 (Fla. 4th DCA 2017) (quoting *State Farm Mutual Automobile Insurance Co. v. K.A.W.*, 575 So. 2d 630, 632 (1991)). In the Opposition, Diaz attempts to distract this Court from his conflicting representation of the Arbitration Clients by claiming that he is not actively prosecuting two (2) of the arbitration cases and that an arbitration award has been entered against Sky Group and Mr. Betancourt in the third arbitration case. *See generally* Opposition at 2-3. However, this Court should note that Diaz <u>does not</u> claim that he no longer represents the Arbitration Clients. *See id.* Diaz's claim that Ms. Betancourt "does not have any way to help Juan Pablo Montoya collect on his arbitration award" is equally misguided and a transparent attempt to distract the Court from the issues raised in Defendants'

3

Motion to Disqualify. *Id*. at 3.  In its Complaint in this matter, the SEC has expressly alleged that that Diaz's client — Ms. Betancourt — received investor funds.  The aforementioned investor funds are the same investor funds that Diaz is currently attempting to recover for three (3) different individuals — the Arbitration Clients.  In the event that the Arbitration Clients cannot collect funds from Mr. Betancourt and Sky Group, Diaz's Arbitration Clients will inevitably (and rightfully, according to the SEC's allegations in this matter) look to Ms. Betancourt — Diaz's current client — as an alleged recipient of investor funds.  The logical outcome of such a scenario is Diaz will be forced to either (1) convince the Arbitration Clients to refrain from seeking funds from Ms. Betancourt, or (2) explain to Ms. Betancourt that his Arbitration Clients will now look to her to recoup their funds.  This is the very definition of a conflict under the Florida Bar Rules.

Finally, as set forth in the Motion to Disqualify, Diaz's violation of the Stipulated Confidentiality and Protective Order ("**Confidentiality Order**") (D.E. 40-2) executed in connection with the AAA arbitrations further demonstrates his reckless disregard for his ethical obligations, including the current conflict between Ms. Betancourt and the Arbitration Clients. *See* Motion to Disqualify at 4.  As discussed in the Motion to Disqualify, Diaz spoke to a reporter and referred to Mr. Betancourt as a "mini-Madoff" (i.e., insinuating that Mr. Betancourt had perpetrated a Ponzi scheme). *See* Motion to Disqualify at 4.  Although Diaz's reference to Mr. Betancourt as a "Madoff" like character alone illustrates his conflict with Ms. Betancourt, his blatant disregard for the Confidentiality Order that he executed exemplifies Diaz's belief that the rules do not apply to him.  As with most of the arguments in the Opposition, Diaz's argument concerning his violation of the Confidentiality Order is unsupported by the facts. *See generally* Opposition at 5-6.  Rather than acknowledge that he willfully violated the Confidentiality Order, Diaz instead argued that the Confidentiality Order did not have a "retroactive application,

4

meaning, that nothing Diaz learned or was disclosed to Diaz before its execution, is protected." *Id.* at 6.

Diaz executed the Confidentiality Order on May 3, 2021, and the AAA Arbitrator, Honorable Judge Sandy Karlan, a retired circuit court judge, entered the Confidentiality Order on May 4, 2021. *See* Confidentiality Order at 6. On or about May 5, 2021, Diaz conducted Mr. Betancourt's deposition. As Diaz is acutely aware, Mr. Betancourt's deposition was a confidential proceeding (the cover page of Mr. Betancourt's deposition transcript is attached hereto as "Exhibit A"). Mr. Betancourt's deposition transcript explicitly stated that it was a "CONFIDENTIAL TRANSCRIPT," and each page of the transcript was labeled "Confidential – Attorneys Eyes Only." *See* Exhibit A (emphasis in original). Notwithstanding the confidential nature of the deposition transcript and the Confidentiality Order that he executed, Diaz provided confidential information from Mr. Betancourt's deposition to the reporter in December 2021. Although Diaz acknowledged that Ms. Betancourt's legal exposure is directly tied to that of Defendants' legal exposure, Diaz still commented that he had "handled and deposed and defended Ponzi schemers over the years," and "Efrain Betancourt is the smoothest, cruelest and most arrogant, selfish and narcissistic of them all." *See* Jay Weaver, *Miami payday loan operator promised investors huge returns. SEC says they lost millions*, MSN News (December 28, 2021), https://www.msn.com/en-us/news/crime/miami-payday-loan-operator-promised-investors-huge-returns-sec-says-they-lost-millions/arAAScJkB?ocid=BingNewsSearch. The reporter also quoted Diaz as stating that Mr. Betancourt "admitted that he did not have law and computer engineering degrees in the United States. But he insisted that his payday loan business was legitimate, despite charging interest rates much higher than Florida's annual cap of 18 percent. He also said that the people who invested in his company were 'lenders' involved in financing short-term, high-interest loans. He called them 'business transactions.'" *Id*. Finally,

5

Diaz disclosed specific testimony from Mr. Betancourt's deposition that "[Mr. Betancourt] made it very clear that they were investing into a payday portfolio," and "[n]ow the payday portfolio has risks." *Id.* Diaz's disclosure of Mr. Betancourt's deposition testimony was an intentional violation of the Confidentiality Order and a transparent attempt to benefit his Arbitration Clients. That conduct unquestionably evidences Diaz's violation of Florida Bar Rule 4-1.7, and further supports Diaz's disqualification in this matter.

### B. Ms. Betancourt Contacted Mr. Betancourt Due to Her Concerns Regarding Diaz's Conduct

According to the Opposition, Defendants' undersigned counsel has engaged in witness tampering, and Mr. Betancourt has attempted to manipulate Ms. Betancourt for his own selfish interests. *See* Opposition at 7. However, Diaz's farfetched allegations could not be further from the truth. Although Diaz is correct that Mr. Betancourt and Ms. Betancourt communicated concerning Diaz's involvement as Ms. Betancourt's counsel, it was Ms. Betancourt that initiated contact with Mr. Betancourt about her discomfort and concern regarding Diaz in an email, dated November 28, 2021 ("**Ms. Betancourt's Email**") (attached hereto as "Exhibit B").[2] As a result of Ms. Betancourt's discomfort with certain actions by Diaz, Ms. Betancourt emailed Mr. Betancourt for assistance and stated:

> I need your help!! And although I know that you have a thousand things on your mind, I beg you to give me a little bit of attention.
>
> Efra, **I read my defense today and it is terrible. It does not honor a word of what I said nor what I desire.**
>
> **I have already sent an email asking to correct it**. I don't know if it can even be done after sending it, but **I didn't like any of the paragraphs** and I need it to be improved.

---

[2] In connection with Exhibit B, Defendants have included a certified translated copy of Ms. Betancourt's email to Mr. Betancourt, as well as Ms. Betancourt's original email which was written in Spanish.

> **I am seriously doubting the professional impartiality of my lawyer (I think he hates you, I don't know why** and don't laugh, I'm being serious :s).

*See* Ms. Betancourt's Email (emphasis added). Although Diaz now claims that he disclosed his current conflict to Ms. Betancourt and is "prepared to provide an ex parte sealed submission to the Court should the Court require further addressing of this issue . . . ", Ms. Betancourt's doubt as to Diaz's impartiality with regard to Defendants supports the notion that Diaz never disclosed to Ms. Betancourt the conflict created by his representation of the Arbitration Clients and Ms. Betancourt. *See* Opposition at 8. To the extent that Diaz had an appropriate conflict waiver in place, he should have provided the same to the Court. Also problematic is the fact that while Ms. Betancourt's Email illustrates that Diaz failed to inform Ms. Betancourt of his conflict, it also evidences the fact that Diaz filed an Answer on Ms. Betancourt's behalf without her prior approval.[3] *See* Ms. Betancourt's Email.

### C.  DEFENDANTS DID NOT WAIVE THEIR RIGHT TO SEEK DIAZ'S DISQUALIFICATION

The final argument that Diaz advanced in the Opposition is that Defendants waived their right to seek Diaz's disqualification and failed to address the legal standard applicable to disqualification motions. However, Diaz's reasoning is flawed for the reasons set forth below. "In determining whether the moving party has waived its right to object to opposing party's counsel, courts consider the following factors: (1) the length of the delay in bringing the motion to disqualify, (2) the date that the movant had the opportunity to object, (3) whether the movant was represented by counsel, (4) the reason for the delay, (5) whether disqualification would result prejudice to the nonmoving party." *Arnett v. Mid-Contl. Cas. Co.*, 8:08-cv-2373-T-27EAJ,

---

[3] On or about November 29, 2021 (i.e., the day following Ms. Betancourt's Email), Diaz filed a Notice of Withdrawal of Two Affirmative Defenses (D.E. 18). On or about December 3, 2021, Diaz filed Ms. Betancourt's Unopposed Motion for Leave to Amend Affirmative Defenses (D.E. 21) and proposed Amended Affirmative Defenses (D.E. 21-1).

2010 WL 11507481, at *2 (M.D. Fla. April 13, 2010) (citations omitted). In support of his flawed argument, Diaz has inappropriately relied upon *Arnett* to his detriment. Although *Arnett* sets forth the legal standard applicable to the issue of disqualification motions, the facts set forth in *Arnett* are distinguishable from the facts herein.

In *Arnett*, the defendants filed a motion to disqualify counsel from representing a party because such representation was directly adverse to another party that counsel was also representing at the same time. *Id.* at *1. The court ultimately agreed and disqualified the law firm's representation of the concurrent client because such representation "presented an actual or apparent conflict in loyalties or a danger of diminution in the vigor of its representation." *Id*. Unlike the facts surrounding Defendants' Motion to Disqualify, the *Arnett* defendants waited approximately **five (5) months** to file a second motion to disqualify the **same law firm** from its representation of the other party the law firm was representing in the litigation. *Id*. In reviewing the defendant's second motion to disqualify counsel, the *Arnett* Court addressed whether or not the defendant's delay in filing the second motion constituted a waiver of defendants' right to seek disqualification. *Id*. In making its decision to deny the second motion to disqualify, the *Arnett* Court noted that the defendants waited over five (5) months from the time defendants filed the first motion to disqualify even though the second motion to disqualify was premised upon the same reasons as the first disqualification motion. *Id*. The *Arnett* Court denied the defendants' second motion to disqualify finding that disqualification would "unfairly prejudice" the plaintiff and that the defendant had "waived the right to object" to the law firm's representation of the plaintiff. *Id.* at *3 ("[T]he law firm has represented Arnett from the date of the filing [of] the complaint and has engaged in substantial preparation, including the filing of a dispositive motion and a response in opposition to [d]efendants' motion for summary judgment.

8

These motions are pending before the District Judge. The law firm's disqualification at this time would result in additional costs to Arnett as well as a delay to all the parties.").

Based upon the standard for waiver articulated in *Arnett*, it is clear that Defendants in the instant matter have not waived any right to seek Diaz's disqualification. Diaz's conflict did not become apparent until approximately November 28, 2021, when Mr. Betancourt received Ms. Betancourt's Email and Defendants subsequently filed their Motion for Disqualification two and a half (2.5) months later on February 14, 2022 — well within a reasonable time period.[4] *See Arnett*, 2010 WL 11507481, at *2 (quoting *Cox v. Amer. Cast Iron Pipe, Inc.*, 847 F.2d 725, 729 (11th Cir. 1988)) ("A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion."). Even if this Court agreed with Diaz that Defendants had the opportunity to seek disqualification since November 28, 2021, Defendants' counsel properly filed the Motion to Disqualify in less than three (3) months. Accordingly, there was no articulable delay in Defendants' filing of the Motion to Disqualify. Finally, with respect to whether Ms. Betancourt would be prejudiced by Diaz's disqualification, there is no basis to find that she would be prejudiced. This case is less than five (5) months old and, as detailed in the Order Setting Trial and Pre-Trial Schedule, Requiring Mediation, and Referring Certain Matters to Magistrate Judge ("**Scheduling Order**") (D.E. 26), the trial period for this case does not begin until January 30, 2023. *See* Scheduling Order at 1. Moreover, the parties have until October 4, 2022, to complete discovery and dispositive motions are not due until October 26,

---

[4] "Courts have found a waiver of the right to object to a conflict issue where the moving party delayed filing motion to disqualify for five months." *Arnett*, 2010 WL 11507481, at n.2 (citing *In re Modanlo*, 342 B.R. 230, 237 (Bankr. D. Md. 2006)); *see also Concerned Parents of Jordon Park v. Hous. Auth. of St. Petersburg*, 934 F. Supp. 406, 408 (M.D. Fla. 1996). "Although other cases finding a waiver of the conflict issue have involved **longer periods of delay**, as previously discussed, the length of delay is just one factor the court considers." *Id.* at n.2 (emphasis added).

2022. *Id*. at 2. In fact, the parties have not conducted any deposition to date. Therefore, there would be no prejudice to Ms. Betancourt by disqualifying Diaz, and the *Arnett* factors do not support a finding of waiver by Defendants in seeking Diaz's disqualification.

### III.     CONCLUSION

Based upon the arguments and authorities set forth in the Motion to Disqualify and herein, Sky Group and Mr. Betancourt request that the Court grant Defendants' Motion to Disqualify Diaz from representing Relief Defendant Ms. Betancourt in this matter, and grant Ms. Betancourt a reasonable time period to secure new counsel.

**CERTIFICATE OF SERVICE**

      I, Robert C. Harris, do hereby certify that on February 24, 2022, a true and correct copy of the foregoing document was electronically filed and served. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the Court's CM/ECF System.

                                                */s/ Robert C. Harris*
                                                Robert C. Harris